1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SHARON BURSE LEE,

            Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

            Defendant.

Case No.  CV 15-00871-RAO

**MEMORANDUM  OPINION  AND
ORDER**

**I.**

**INTRODUCTION**

      Sharon Burse Lee ("Plaintiff") challenges the Commissioner's denial of her applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") following an administrative law judge's ("ALJ") decision that she had not been under a disability, as defined in the Social Security Act.  Administrative Record ("AR") 27.  For the reasons stated below, the Commissioner's decision is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

/ / /

/ / /

## II.

## PROCEEDINGS BELOW

On April 18, 2011, Plaintiff filed applications for DIB and SSI, alleging disability beginning March 5, 2011[1] (her alleged onset date ("AOD")).  AR 14. Plaintiff's claims were denied initially on September 20, 2011, and upon reconsideration on April 9, 2012.  *Id.*  On March 14, 2012, Plaintiff filed a written request for hearing, which was held on July 10, 2013.  *Id.*  Represented by counsel, Plaintiff appeared and testified.  *Id.*  Also appearing and testifying were an impartial medical expert and an impartial vocational expert ("VE").  *Id.*  On October 22, 2013, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act.[2]  *Id.* at 27.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. *Id.* at 1-7.  Plaintiff filed the instant action on February 6, 2015.  Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled.  20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2009.  AR 17.  At **step two**, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, hypertension, obesity, cardiovascular artery disease, mild degenerative arthritis of the lumbar spine, cervical radiculopathy, and mood disorder, not otherwise specified.  *Id.*  At **step three**, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix

---

[1] Plaintiff's originally alleged a March 30, 2009 onset date.  AR 14.  At the hearing, through her attorney, Plaintiff amended her onset date to March 5, 2011.  *Id.*

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

1."  *Id.* (citations omitted).  At **step four**, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") to:

> [P]erform light work … except for the following limitations: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she needs the ability to change positions briefly for one to three minutes every hour; she cannot raise her upper extremities above shoulder height; she can occasionally bend, kneel, stoop, crouch, crawl, and climb stairs; she cannot balance on either foot; she cannot climb ladders, ropes, or scaffolds; she cannot work at unprotected heights; she is precluded from working in excessive heat or cold; she is precluded from jobs requiring hypervigilance; she cannot be responsible for the safety of others; she should not supervise others; and she should have no intense interpersonal interaction such as taking complaints or experiences as those experienced by emergency person[nel].

*Id.* at 18-19.  Based on her RFC, the ALJ found that Plaintiff could perform her past relevant work as actually and generally performed.  *Id.* at 27.  Thus, the ALJ found that Plaintiff was disabled, as defined in the Social Security Act.  *Id.*

### III.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts

3

1   and conflicting clinical evidence, stating his interpretation thereof, and making

2   findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*

3   *v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)).

4   "[T]he Commissioner's decision cannot be affirmed simply by isolating a

5   specific quantum of supporting evidence.  Rather, a court must consider the record

6   as a whole, weighing both evidence that supports and evidence that detracts from

7   the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.

8   2001) (citations and internal quotations omitted).  "'Where evidence is susceptible

9   to more than one rational interpretation,' the ALJ's decision should be upheld."

10   *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

11   *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882

12   ("If the evidence can support either affirming or reversing the ALJ's conclusion, we

13   may not substitute our judgment for that of the ALJ.").  The Court may review only

14   "the reasons provided by the ALJ in the disability determination and may not affirm

15   the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630

16   (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.

## DISCUSSION

19   Plaintiff presents two issues for review: (1) whether the ALJ's stated reasons

20   for discounting Plaintiff's subjective complaints were legally sufficient; and (2)

21   whether substantial evidence supported the ALJ's RFC assessment; specifically,

22   whether the ALJ properly weighed the opinions in the record.  *See* Memorandum in

23   Support of Plaintiff's Complaint ("Pl. Memo.") at 4-16, Dkt. No. 19.

**A.    Plaintiff's Credibility**

25   Plaintiff contends that "the ALJ failed to articulate sufficient reasons to find

26   [her] not credible."  Pl. Memo. at 12.  Defendant contends that substantial evidence

27   supported the ALJ's adverse credibility finding.  *See* Defendant's Memorandum in

28   Support of Answer ("Def. Memo.") at 1-3, Dkt. No. 22.

1           1.      **Applicable Law**

2      "In assessing the credibility of a claimant's testimony regarding subjective

3  pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*

4  *v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572, F.3d

5  586, 591 (9th Cir. 2009)).  "First, the ALJ must determine whether the claimant has

6  presented objective medical evidence of an underlying impairment which could

7  reasonably be expected to produce the pain or other symptoms alleged." *Treichler*

8  *v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (2014) (quoting *Lingenfelter,*

9  504 F.3d at 1036) (internal quotation marks omitted).  If so, and if the ALJ does not

10  find evidence of malingering, the ALJ must provide specific, clear and convincing

11  reasons for rejecting a claimant's testimony regarding the severity of his symptoms.

12  *Id.*  The ALJ must identify what testimony was found not credible and explain what

13  evidence undermines that testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208

14  (9th Cir. 2001).  "General findings are insufficient." *Lester,* 81 F.3d at 834.

15           2.      **Analysis**

16      "After careful consideration of the evidence," the ALJ found that Plaintiff's

17  "medically determinable impairments could reasonably be expected to cause some

18  of [her] alleged symptoms[,]" but found that Plaintiff's "statements concerning the

19  intensity, persistence, and limiting effects of [her] symptoms are not credible to the

20  extent that" they were inconsistent with her assessed RFC.  AR 20.  The ALJ gave

21  three reasons: (1) Plaintiff received conservative treatment; (2) Plaintiff's activities

22  are extensive given her allegations of debilitating pain; and (3) Plaintiff's testimony

23  was not supported by objective evidence in the record.[3]  Because no malingering

24  allegation was made, the ALJ's reasons must be "clear and convincing."

25  
26  [3] The ALJ further stated that Plaintiff's "inconsistency in reporting her activities of daily living diminishes her credibility and calls into question[] her credibility regarding her other allegations."  AR 20.  However, the ALJ does not identify any

27  particular inconsistency.  The Court therefore does not find this reason for rejecting

28  Plaintiff's testimony sufficiently specific, clear and convincing.

### a.    *Conservative Treatment*

The ALJ found that Plaintiff had received only conservative treatment for her impairments.  AR 20 ("The treatment records since the amended onset date reveal that despite seeking emergency and hospital care the claimant's treatment was limited to conservative methods."), 22 ("The treatment records show the claimant received conservative treatment for the diagnoses of various forms of mood disorders.  The claimant's treatment consisted of prescribed medications with some adjustment and some therapy.  There is no evidence to suggest the claimant was ever hospitalized for psychiatric treatment.").  Such a finding may serve as a reason to discount a claimant's credibility.  *See Parra v. Astrue,* 481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting claimant's complaints where her "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

Plaintiff disagrees with the ALJ's finding.  Plaintiff argues that her treatment has not been conservative because she has been prescribed numerous medications and underwent a series of epidural steroid injections, and because "[a] right L5-S1 laminectomy/foraminotomy and placement of an interspinus spacer has been recommended."  Pl. Memo. at 15.[4]  The record shows that Plaintiff has taken pain medications (including a number of narcotics) and muscle relaxers such as Vicodin, Gabapentin, Motrin, Soma, and Norco, *see, e.g.,* AR 918 (noting on November 4, 2011, that Plaintiff had taken "oral pain medications and interventional injections with some relief"), 1032 (noting on April 13, 2012, October 25, 2012, and January

---

[4] Plaintiff also argues that she cannot be faulted for not pursuing "non-conservative treatment options if none exist."  Pl. Memo. at 15 (citing *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).  But Plaintiff does not actually appear to argue that there were only conservative treatment options.  To the contrary, as noted above, Plaintiff references a prior surgical recommendation.

10, 2013 that Plaintiff took, among other medications, Soma, Gabapentin, Vicodin, and Motrin), 1256 (noting on September 10, 2013 that Plaintiff had been prescribed and took Norco from May 22, 2013 to June 21, 2013), and has underwent multiple lumbar transforaminal epidural steroid injections. *See, e.g.,* AR 906-07, 909-10.

The record further shows that on November 4, 2011, G. Ty Thaiyananthan, M.D., to whom Plaintiff was referred by Dharmesh Mehta, M.D., after examining Plaintiff, reviewing and discussing her medical record with her, and reviewing a MRI of her spine showing "disc degeneration and right sided foraminal stenosis at L5-S1[,]" did indeed "recommend[] a right L5-S1 laminotomy/foraminotomy and placement of an interspinus spacer." *Id.* at 874-75. Moreover, there are a number references to prior physical therapy sessions and physical therapy recommendations in the record. *See id.* at 616 (pain management consultation, referred by Dr. Brown, dated September 17, 2009, noting that Plaintiff's prior treatments "include TENS unit, *physical therapy*, and traction therapy") (emphasis added), 641 (outpatient physical therapy progress summary addressed to Dr. Brown, dated June 9, 2008, noting that Plaintiff "has been seen in this department for five visits since initiating care on May 29th"), 911 (October 18, 2011 consultation with Dr. Mehta, noting that Plaintiff started physical therapy), 1193 (January 31, 2013 consultation with Daniel J. Lee, M.D., noting that Plaintiff's "[l]eft hand symptoms did not seem as severe [as her right hand symptoms]. I recommended a physical therapy for this, which [she] will go through."), 1264 ("History & Physical Report" dated May 22, 2013, noting that: "Initial therapy includes Epidural Steroid Injection and physical therapy."). *But see id.* at 1256 ("History & Physical Report" dated September 10, 2013, noting that: "There has been no previous physical therapy.").

Given the foregoing, the Court is not convinced that Plaintiff's treatment has been the type of "conservative treatment" that is "sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra*, 481 F.3d at 751 (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995)). Unlike the "over-the-

counter pain medication" in *Parra*, *see id.* at 750-51, the use of narcotic medication in conjunction with other treatment is generally seen as non-conservative treatment. *See Martinez v. Colvin*, 2015 WL 4270021, at *6 (C.D. Cal. July 13, 2015) (citing *Lapierre-Gutt,* 382 F. App'x at 664) (treatment consisting of copious amounts of narcotics, occipital nerve blocks, and trigger point injections is not conservative)); *Christie v. Astrue,* 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction is not conservative)).  Here, as noted above, the record reflects that Plaintiff's impairments are treated with narcotic and non-narcotic pain medications, muscle relaxers, and epidural steroid injections—and that surgical intervention has been recommended.  Accordingly, this is not a specific, clear and convincing reason for rejecting Plaintiff's testimony.  *Cf. Davis v. Colvin*, 2015 WL 5255353, at *11 (E.D. Cal. Sept. 9, 2015) (affirming ALJ's conservative treatment finding where the plaintiff had not been referred to a pain specialist, or received specialized treatment to alleviate his pain, and where the record lacked evidence that surgery or any other aggressive treatment had been recommended).

### b.   *Activities of Daily Living*

The ALJ also found that "[d]espite the alleged severity of her impairments," Plaintiff "engaged in a somewhat normal level of daily activity and interaction."  AR 20.  Inconsistency between symptom allegations and daily activities may act as a clear and convincing reason to find claimants less credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).  But the mere fact that "a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001).  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling

environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted)*; see also Molina*, 674 F.3d at 1112-13 ("While a claimant need not vegetate in a dark room … to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.") (internal citations and quotations omitted).  "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin,* 759 F.3d 995, 1016 (9th Cir. 2014)).

Here, the ALJ stated that, despite "the alleged severity of her impairments[,]" Plaintiff "engaged in a somewhat normal level of daily activity and interaction." AR 20.  Specifically, the ALJ noted that Plaintiff admitted to being able to shop and socialize with others on the phone, manage her finances, follow instructions, dress and bathe herself, watch television, and independently attend to her personal care. *Id.*  The ALJ then found that "[s]ome of the physical and mental abilities and social interactions required … to perform these activities are the same as those necessary for obtaining and maintaining employment.  The claimant's ability to participate in such activities undermined the credibility of the claimant's allegations of disabling functional limitations."  *Id.*  However, even if the abilities underlying the activities the ALJ identified—all of which appear to be home-based and primarily sedentary in nature—*could* be utilized to obtain and maintain employment, the ALJ's opinion does not explain how they *actually* translate to "light work" employment activities.

The ALJ's opinion also notes that Plaintiff "informed her treating physicians she was able to go on a cruise and take a trip to Florida."  AR 20; *see also id.* at 24 (noting that the opinion of Kenneth S. Brown, M.D., was given less weight, in part,

because of Plaintiff's "activities of going on a cruise … and taking vacations"), 25 (noting that the opinion of Ildiko J. Hodde, M.D., was given less weight, in part, because of Plaintiff's admission that she went "on a cruise").  However, the record does not appear to discuss the cruise or vacation in detail.  *Id*. at 947 (progress note by Dr. Hodde dated March 23, 2012, noting only that Plaintiff "went on the cruise.  She was sea sick the whole time.  She still enjoyed it."), 1228 (progress note from Foothill Psychological Services dated December 3, 2012, noting that "Plaintiff reported on her trip to FL" and discussing her interactions with family members).  Nor does it appear that Plaintiff was asked about either trip at the hearing.  *Id.* at 54-76.  Absent findings as to why Plaintiff's trips undermine her credibility, this Court cannot find this reason to be clear and convincing.  *See Santos v. Colvin*, 2015 WL 3886939, at *6 (C.D. Cal. June 24, 2015) ("Merely referencing Plaintiff's trips [to Mexico] was insufficient to establish a conflict with Plaintiff's testimony.") (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999); *Lester,* 81 F.3d at 834)); *see also Chalfant v. Astrue*, 2011 WL 61612, at *6 (C.D. Cal. Jan. 6, 2011) (finding that the "plaintiff's vacation to Hawaii does not inherently negate her allegations of pain and other symptoms, and the ALJ provided no explanation as to why she found plaintiff's ability to partake in such a vacation incompatible with plaintiff's complaints. Nor is it apparent from plaintiff's testimony about her trip that she spent a 'substantial part' of her time performing any physical task that translates to the work environment") (citation omitted).

### c.    *Objective Medical Evidence*

Finally, the ALJ found that Plaintiff's "credibility regarding the severity of her symptoms is diminished because those allegations are greater than expected in light of the objective evidence."  AR 20.  "[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence[.]"  *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).  Because the ALJ's first two reasons for discrediting Plaintiff's subjective statements have been

10

found insufficient, this reason alone cannot be deemed sufficient. An ALJ may find a claimant's testimony not credible and disregard it, but courts "cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins,* 466 F.3d at 884-85. For the reasons above, the Court finds that the ALJ did not provide clear and convincing reasons for discounting Plaintiff's testimony.

Accordingly, remand is warranted on this issue.

**B.** **ALJ's RFC Assessment**

Plaintiff argues that the "ALJ's residual functional capacity assessment lacks the support of substantial evidence." Pl. Memo. at 5. Specifically, Plaintiff objects to the weights the ALJ gave to the opinions of Dr. Brown, Judith Vogelsang, D.O., Arnold Ostrow, M.D., Seung Ha Lim, M.D., Ernest A. Bagner, M.D., and Ildiko J. Hodde, M.D. Pl. Memo. at 6, 10-11. Defendant contends that substantial evidence supported the ALJ's RFC assessment. Def. Memo. at 3-6.

**1.** **Applicable Law**

Courts accord varying degrees of deference to medical opinions based on the type of physician providing it: (1) "treating physicians" who examine and treat; (2) "examining physicians" who examine, but do not treat; and (3) "non-examining physicians" who neither examine nor treat. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). A treating physician's opinion is generally entitled to greater weight than a non-treating physician's opinion, and an examining physician's opinion is generally entitled greater weight than a non-examining physician's opinion. *See Garrison,* 759 F.3d at 1012. This is because treating physicians are employed to cure and have more opportunity to observe claimants. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

A treating physician's opinions "must be given substantial weight." *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988); *see also Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989) (ALJs must give sufficient weight to the subjective aspects of a doctor's opinion, especially when the opinion is that of a treating physician). If

11

a treating physician's opinion is supported by acceptable diagnostic techniques, and is not inconsistent with other substantial evidence in the record, it should be given controlling weight. *See* 20 C.F.R. § 416.927(c)(2). If not given controlling weight, its weight is determined by the frequency of examination; length, nature, and extent of the treatment relationship; consistency with the entire record; the doctor's area of specialization; the amount of evidence supporting the opinion; and "other factors." 20 C.F.R. § 416.927(c)(2)-(6). If a treating physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008). If a treating physician's opinion is contradicted, the ALJ need only provide "specific and legitimate reasons" for discounting it. *Id.*

### 2. <u>Dr. Brown's Opinion</u>

Dr. Brown completed a Physical Residual Functional Capacity Questionnaire regarding Plaintiff's impairments on June 15, 2011. AR 480. Dr. Brown diagnosed Plaintiff as having diabetes, neuropathy, degenerative disc disease, and sciatica, and noted that her condition had not been improving. *Id*. Dr. Brown noted that Plaintiff experienced, *inter alia*, back pain, right leg pain, muscle spasms, lightheadedness dry mouth, and headaches. *Id.* Regarding pain, Dr. Brown noted that Plaintiff had daily right leg pain, which worsened when sitting or walking, and burning pain, due to neuropathy, 50 to 75% of each day at a severity level of 8 out of 10. *Id.*

Dr. Brown opined that Plaintiff's pain and symptoms would "often" interfere with her attention and concentration and that Plaintiff was moderately limited in her ability to deal with work stress. *Id*. at 481-82. Dr. Brown also opined that Plaintiff could walk no more than two blocks without rest; could continuously sit for only 30 minutes and stand for only 15 minutes at one time; could sit for about two hours of an eight-hour workday and stand for less than two hours of an eight-hour workday; would need to be able get up and walk around for five minutes every 30 minutes in

/ / /

12

an eight-hour workday; would need a job that allowed her to shift positions at will; and would need to take unscheduled breaks every 2 hours. *Id.* at 482.

Dr. Brown noted that Plaintiff "sometimes" required a cane or other assistive device while standing or walking, and opined that she could lift less than 10 pounds occasionally, and never more than 10 pounds, and had "some" reaching limitations and carpel tunnel. *Id.* at 483. Dr. Brown felt that Plaintiff's impairments would produce "good" and "bad" days, and opined that they would cause her to be absent from work about three times a month. *Id*. at 484. Dr. Brown noted that the earliest date that his description of Plaintiff's symptoms and limitations applied was one and one-half years before it was completed, *i.e.*, approximately January 2010. *Id.*

Dr. Brown also completed a Pain Work Restriction Questionnaire regarding Plaintiff's impairments in June 2011. *See id.* at 592-94. Therein, Dr. Brown noted Plaintiff's impairments and then identified two MRIs "which verif[ied] or tend[ed] to verify the existence of [Plaintiff's] impairment[s]," one in June 2008 and another in August 2009. *Id.* at 592. In assessing Plaintiff's ability to perform mental work activities in the presence of pain, Dr. Brown opined that Plaintiff would be slightly limited in her ability to recall work procedures, maintain regular attendance and be punctual, and sustain an ordinary routine without special supervision; moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to work-setting changes; and severely limited in her ability to "[c]omplete a normal work day without interruptions from pain based symptoms, performing at a consistent pace without an unreasonable number of and length of rest periods." *Id*. at 592-93. Dr. Brown listed Plaintiff's pain medications, estimated that the onset of Plaintiff's impairments was January 2010, and noted that Plaintiff's prognosis was "poor." *Id.* at 594.

The ALJ accorded "[l]ittle weight" to Dr. Brown's opinions, finding that the limitations he assessed "would essentially preclude the claimant from substantial gainful activity." *Id*. at 24. The ALJ supported her conclusion by stating that:

13

Dr. Brown provided little objective or clinical evidence to support the basis for a finding of disability. It appears Dr. Brown's opinion relied solely on the subjective complaints of the claimant, who has been found only partially credible. The allegations of a disabling condition are not supported by the claimant's admitted activities or her treatment history. Specially, the record is absent of recommendation for aggressive treatment and her activities of going on a cruise, attending to her personal care, and taking vacations support the limitations assessed herein.

*Id.* (citation to the record omitted).

### a.   *Supportability of Dr. Brown's Opinion*

The ALJ found that Dr. Brown provided little objective or clinical evidence to support his opinion, and instead appeared to have relied on Plaintiff's subjective complaints. AR 24. This is generally a permissible reason to discount a treating physician's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citations omitted) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion."); *Holohan*, 246 F.3d at 1202 (citing 20 C.F.R. § 404.1527(d)(3)) (a treating physician's opinion may be entitled to little, if any, weight if it is unsupported). Here, however, it appears that there *is* clinical evidence in the record that supports Dr. Brown's opinion, or at least warrants further inquiry.

Dr. Brown was Plaintiff's primary care doctor from approximately December 2000 until his retirement in approximately 2013. *See* AR 56 (Plaintiff stating that, as of the July 10, 2013 hearing, her primary care physician was "Dr. Marahah" who "took over the practice of Dr. Brown"), 563 (December 6, 2000 lab results noting Dr. Brown as Plaintiff's physician), 592-94 (pain work restriction questionnaire completed by Dr. Brown in June 2001 stating that he began treating Plaintiff in 2001). During that period, Dr. Brown addressed a number of health issues Plaintiff

encountered— including issues related to her diabetes mellitus, cardiovascular artery disease, hypertension, obesity, lumbar spine issues, and cervical radiculopathy—either directly or through referrals to appropriate specialists.[5]  *See generally id.* at 491-720.

While Dr. Brown's opinion itself does not offer significant clinical findings and objective signs, *see* AR 480 (noting only decreased sensation in Plaintiff's feet and positive straight leg raise in her right leg), other evidence in the record suggests that the ALJ's conclusion (*i.e.*, that it "appears Dr. Brown's opinion relied solely on the subjective complaints of the claimant," *id.* at 24) is somewhat overstated.  For example, on May 29, 2008, Dr. Brown referred Plaintiff to Pomona Valley Hospital for physical therapy to treat her right lumbar radiculopathy.  *Id*. at 643.  Plaintiff's initial evaluation from that session notes that Plaintiff was taking a number of pain medications and at times rated her pain as a 10 on a 10-point scale.  *Id*.  It is further noted that Plaintiff's functional deficits included sitting, bending, lifting, driving, walking, and sleeping.  *Id*.  Plaintiff was observed and examined, and was assessed as having right lumbar radiculopathy.  *Id*.  Plaintiff's overall prognosis, however, was "fair-plus[,]" and her post-evaluation plan of care was relatively conservative.  *Id*. at 643-44.  Five visits and less than two weeks later, however, on June 9, 2008, a physical therapy progress summary notes that Plaintiff had "report[ed] only 20% improvement" from her treatment and "continued to complain of severe discomfort, which is limiting her ability to participate in normal ADLs."  *Id.* at 641.

---

[5] Dr. Brown's decade-long treatment history with Plaintiff is a factor that generally weighs in favor of giving his opinion about Plaintiff's impairments more weight.  *See* 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated [the claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight we will give to the source's medical opinion."); *see also Manzo v. Astrue*, 2013 WL 1320521, at *5 (N.D. Cal. Mar. 29, 2013) ("[A] treating physician's opinion is given more weight if the treating physician has seen the claimant 'a number of times' and for a sufficiently long period to obtain a 'longitudal picture' of the claimant's impairments.") (citation omitted).

Shortly thereafter, on June 20, 2008, Dr. Brown referred Plaintiff for an MRI on her lumbar spine, which revealed "[m]ild degenerative changes to the L3-4 disk and L4-5 facets." *Id.* at 571.  A second MRI was performed on August, 28, 2009 and showed "[d]egenerative disc disease at L3-L4 level with annular tear causing mild canal stenosis." *Id*. at 568.[6]  Three weeks after her second MRI, on September 17, 2009, Dr. Brown referred Plaintiff to a pain medication consultation.  *Id.* at 616. The consultant noted that Plaintiff's chief complaint was lower back pain radiating down her right leg as of August 20, 2009; that Plaintiff's pain was sharp, constant, and worse when sitting, standing, walking, bending, and lifting; and that Plaintiff had "difficulty with daily activity, cooking, housecleaning, gardening, dressing, driving, sports, having fun, sex, relationship, working, and everything."  *Id*.  The consultant further noted that Plaintiff's previous treatments included "TENS unit, physical therapy, and traction therapy."  *Id*.

Further, on August 10, 2010, Dr. Brown referred Plaintiff to Pomona Valley Hospital for physical therapy to address left cervical radiculopathy.  *Id.* at 602.  And though occurring after Dr. Brown gave his disputed opinions, Dr. Brown received summaries of Plaintiff's October 21, 2011 and November 11, 2011 lumbar epidural steroid injections, suggesting that he—and Dr. Thaiyananthan, who is also listed— may have referred Plaintiff for those procedures.  *Id.* at 906, 909.  In sum, there is evidence in the record which suggests Dr. Brown's opinions were not based only on Plaintiff's subjective complaints.  Accordingly, the Court finds that this reason is not a specific, legitimate reason to reject Dr. Brown's opinions.

### b.    *Inconsistency With Plaintiff's Admitted Activities*

The ALJ also found that Dr. Brown's allegations of a disabling condition are not supported by Plaintiff's admitted activities, including "her activities of going on

---

[6] On January 14, 2009, after Plaintiff's first MRI, but before her second, Dr. Brown also completed a DMV form on Plaintiff's behalf so she could acquire a permanent disability placard.  AR 636.

1   a cruise, attending to her personal care, and taking vacations." AR 24. "A material
2   inconsistency between a treating physician's opinion and a claimant's admitted level
3   of daily activities … can furnish a specific, legitimate reason for rejecting a treating
4   physician's opinion." *Kirby v. Colvin*, 2015 WL 4608090, at *8 (C.D. Cal. July 31,
5   2015) (citing *Rollins,* 261 F.3d at 856). However, given the discussion above, *see*
6   § IV(A)(2)(b), this is not a specific, legitimate reason to reject Dr. Brown's opinion.

7             c.      *Lack of Aggressive Treatment*

8             Finally, the ALJ found that Dr. Brown's allegations of a disabling condition
9   is not supported by the treatment history, and specifically, that "the record is absent
10  of recommendation for aggressive treatment." AR 24. This is a specific, legitimate
11  reason for rejecting a treating physician's opinion. *See Rollins,* 261 F.3d at 856 (a
12  treating physician's opinion that the claimant suffers from debilitating impairments
13  may be rejected if only conservative treatment was prescribed). At the time that Dr.
14  Brown gave his opinions, *i.e.*, June 2011, Plaintiff had not yet received her epidural
15  steroid injections or been recommended surgery. *See* AR 874-75, 906, 909. Thus,
16  this reason is a specific, legitimate reason to reject Dr. Brown's opinion. *Veniale v.*
17  *Colvin*, 2014 WL 1246135, at *3 (C.D. Cal. Mar. 24, 2014) ("There is no evidence
18  in the record that Plaintiff's treating physicians … suggested aggressive treatment,
19  such as surgery or specialized pain management. Rather, Plaintiff's physicians
20  recommended that he exercise and attend physical therapy."); *Valdez v. Comm'r of*
21  *Soc. Sec.*, 2011 WL 489694, at *5 (C.D. Cal. Feb. 7, 2011) (noting that plaintiff's
22  pain was controlled with Methadone and that plaintiff had declined more aggressive
23  treatment "such as epidural steroid injections"). However, for the reasons above,
24  the Court finds that the ALJ's reasons for rejecting Dr. Brown's opinions were not
25  supported by substantial evidence, and thus, that remand is warranted on this issue.

26        **3.     Dr. Hodde's Opinion**

27           Dr. Hodde prepared an "Evaluation Form For Mental Disorders" on July 26,
28  2012, but completed only two of the eleven sections—noting that Plaintiff: (1) does

17

not need assistance to keep appointments and (2) has not been hospitalized for her mental disorder. *Id*. at 930-33. Dr. Hodde referenced attached notes on four other occasions. *Id*. at 930. Also on July 26, 2012, in a "Medical Source Statement Of Ability To Do Work-Related Activities (Mental)," Dr. Hodde opined that Plaintiff was *slightly* impaired in her ability to understand, remember, and carry out detailed instructions and to make judgments on simple work-related decisions; *moderately* impaired in her ability to interact appropriately with the public and sustain a regular routine without special supervision; and *markedly* impaired in her ability to make judgments on complex work-related decisions, maintain attendance and punctuality, keep a consistent pace without more than regular breaks, interact appropriately with supervisors and co-workers, and respond appropriately to changes in a routine work setting. *Id*. at 934-35. As support, Dr. Hodde stated that Plaintiff "is very irritable, lacks energy and motivation, [and] often is unable to get out of bed." *Id*. at 935.

Dr. Hodde also completed a Mental Impairment Questionnaire on March 18, 2013. *Id.* at 999-1002.[7] Dr. Hodde stated that she had seen Plaintiff for psychiatric evaluation and medication management monthly, or as needed, as of December 12, 2011. *Id*. at 1000. Dr. Hodde diagnosed Plaintiff with bipolar disorder, assessed a GAF score of 35,[8] and identified the following signs and symptoms: delusions or hallucinations, sleep, mood and perceptual disturbances, persistent irrational fears, emotional liability, decreased energy, and paranoia or inappropriate suspiciousness.

---

[7] Only three pages of the questionnaire are included, the signature page is missing, and the questionnaire does not include Dr. Hodde's name. AR 1000-02. However, the fax cover letter is on letterhead with Dr. Hodde's name and address. *Id.* at 999.

[8] A GAF (Global Functioning Assessment) score is the clinician's judgment of the individual's overall functioning level. It is rated with respect only to psychological, social, and occupational functioning, without regard to functional impairments due to physical or environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), at 32 (4th ed. 2000). A GAF score of 35 indicates some impairment in reality testing; impairment in speech and communication; or serious impairment in several of: occupational or school functioning, interpersonal relationships, judgment, thinking, or mood.

*Id.* at 1000-01.  Dr. Hodde noted that Plaintiff partially responded to medications (*i.e.*, Seroquel, Cymbalta and Saphris, the side effect of which included drowsiness and fatigue) and alternated between progress and setbacks, and opined that Plaintiff would on average be absent from work more than three times a month, and that her prognosis was "guarded."  *Id*. at 1001-02.  Dr. Hodde further noted that Plaintiff's mental impairments exacerbated her general pain symptoms.  *Id*. at 1002.

The ALJ gave Dr. Hodde's opinion "little weight," in part, because the ALJ found that Dr. Hodde's opinion was "brief, conclusory, and inadequately supported by clinical findings[,]" and appeared to place more weight on Plaintiff's subjective complaints.  *Id*. at 25.  Specifically, according to the ALJ, the limitations Dr. Hodde suggested "are in direct contradiction to the mental status evaluation from the same period."  *Id.*  (citations to the record omitted).  Plaintiff objects to that finding, and argues that Dr. Hodde's treatment notes support his opinions.  *See* Pl. Memo. at 11.

"'[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and *unsupported by the record as a whole or by objective medical findings*.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1040 (9th Cir. 2014) (alteration and emphasis in original) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)).  Here, Dr. Hodde's opinions are certainly brief and conclusory.  Indeed most of his opinions are in "check the box" form, or are, in the case of the July 26, 2012 "Evaluation Form For Mental Disorders," incomplete.  AR 930-35, 999-1002; *see also Healy v. Astrue*, 379 F. App'x 643, 646 (9th Cir. 2010) (affirming rejection of a treating physician's opinion, in part, because his report was a "check the box" style questionnaire and included no objective clinical findings).  Thus, the question is whether Dr. Hodde's opinion is supported by his clinical findings.

Dr. Hodde started treating Plaintiff on December 12, 2011.  *See* AR 937-41.  In addition to the July 26, 2012 Evaluation Form For Mental Disorders and Medical Source Statement, and the March 18, 2013 Mental Impairment Questionnaire, there are 15 Progress Notes in the record from Dr. Hodde's sessions with Plaintiff, dated

from March 22, 2012 to July 28, 2013.  *Id.* at 930-36, 942-48, 981-89, 999-1002, 1203-20.  Here, the ALJ found that Dr. Hodde's opinions were directly contradicted by "the mental status evaluation[s]" in his March 22, 2012, April 30, 2012, May 30, 2012 and July 3, 2012 progress notes.  *See id.* at 25.  The ALJ does not, however, explain *how* the objective findings in those mental status evaluations contradict Dr. Hodde's opinions—or provide any examples of a contradiction.  "[M]erely stat[ing] that the objective factors point toward an adverse conclusion and mak[ing] no effort to relate any of th[e] objective factors to any specific medical opinions and findings [being] reject[ed] … is inadequate."  *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988).  In short, this is not a sufficiently "*specific* and legitimate reason[]" to reject Dr. Hodde's opinions.  *Carmickle,* 533 F.3d at 1164 (emphasis added).[9]

For the foregoing reasons, the Court finds that the ALJ's conclusion that Dr. Hodde's opinions "are of little probative value … because they are inconsistent with the objective medical evidence as a whole" is not a specific, legitimate reason to reject them.  AR 25.  For the reasons stated in § IV(A)(2)(b), the Court finds that the ALJ's conclusion that Dr. Hodde's opinions are of little probative value due to Plaintiff's admitted activities of daily living is also not a specific, legitimate reason to reject them. Accordingly, remand is warranted on this issue.

### 5.    Other Claims

Plaintiff argues that the ALJ erred in giving significant weight to the opinions of internal medicine consultative examiner Dr. Lim, who examined her on July 27,

---

[9] The specificity requirement is all the more important here since Plaintiff has been diagnosed with bipolar disorder, a "severe psychiatric illness that is marked by *episodes* of mania and depression [and] impairment of functioning[.]"  *Agyeman v. I.N.S.,* 296 F.3d 871, 881 (9th Cir. 2002) (emphasis added); *Cf. Delegans v. Colvin*, 584 F. App'x 328, 331 (9th Cir. 2014) (moments of good health may not be used to discredit claimants, "especially in cases involving mental impairments, *which often present episodically*") (emphasis added).  Persons affected by bipolar disorder thus may exhibit objective symptoms and factors on some occasions but none in others.

2011, because "Dr. Lim reviewed *no medical records* in reaching his conclusion[.]" Pl. Memo. at 9 (emphasis added); *see also* AR 23-24. In the next sentence, Plaintiff appears to contradict herself, stating that, as "Dr. Vogelsang noted, Dr. Lim did not have the benefits of *all the records* in rendering his opinion." *Id.* (emphasis added). But Plaintiff returns to the initial version two sentences later, stating that Dr. Lim's opinion should be accorded no weight "because he *did not review any records*." *Id.* (emphasis added). Plaintiff's claim likely is not clear because its apparent source, Dr. Vogelsang's RFC assessment, is not clear. Dr. Vogelsang considered Dr. Lim's light work finding, but did not adopt it in part because, according to Dr. Vogelsang Dr. Lim did not have all of the records for review. *Id.* at 962. That Dr. Lim did not have the benefit of *all* of the records suggests he may have reviewed *some* records, especially since Dr. Vogelsang noted a specific record that Dr. Lim did not review. *See id.*; *see also id.* at 770 (Dr. Lim's RFC assessment noting that "[b]ased on the available medical information," Plaintiff can perform light work). In any event, on remand, the ALJ should consider this claim, determine whether Dr. Lim's opinion is supported by Plaintiff's full medical history, and, if necessary, adjust its weight.

Plaintiff objects to the "little weight" accorded to the opinions of state agency reviewing physician Dr. Vogelsang and the "great weight" accorded to the opinion of Dr. Ostrow, the medical expert at her hearing, *see* Pl. Memo. at 8-9, and argues that Dr. Bagner's opinion that she would be moderately limited in handling normal work stresses was not "subsumed in the mental RFC found by the ALJ." Pl. Memo. at 11; AR 24, 956-62. However, having already found that remand is warranted, the Court declines to address these assertions. *Hiler v. Astrue,* 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue,* 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide … further relief than granted, and all of which can be addressed on remand.").

1

**C.      Remand is Warranted**

It is within the Court's discretion to determine whether to remand for further proceedings or order an award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Remanding for an award of benefits is appropriate only in rare circumstances. *Brown-Hunter v. Colvin*, 2015 WL 4620123, at *7 (9th Cir. Aug. 4, 2015). Before ordering a remand for an award of benefits, the Court must find that "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. Here, further administrative proceedings will allow the ALJ an opportunity to revisit the medical opinions in the record, if prudent, further develop the record, and determine whether an adjustment to Plaintiff's RFC is warranted. If adjustments are made, the ALJ must determine whether Plaintiff is still able to perform her past relevant work, and if not, whether there are other jobs in the national economy that Plaintiff can perform.[10]

/ / /

---

[10] At Plaintiff's hearing, the ALJ posed five hypothetical RFCs to the VE. The first was substantially similar to the RFC which was ultimately assessed. *See* AR 76-77. The VE opined that a person with that RFC could perform Plaintiff's past work. *Id.* at 77. The second hypothetical amended the first to include a moderately complex tasks limitation. *Id.* The VE opined that a person with that RFC could not perform Plaintiff's past work, but could perform two other jobs: office helper (Dictionary of Occupational Titles ("DOT") # 239.567-010), and assembler, small products (DOT # 706.684-022). *Id.* at 78. The third hypothetical amended the first by changing lifting and carrying to ten and less than ten, respectively. *Id.* at 79. The VE opined that a person with that RFC could perform Plaintiff's past relevant work. *Id.* at 79. The fourth hypothetical amended the third to include a moderately complex tasks limitation. *Id.* The VE opined that a person with that RFC could not perform Plaintiff's past work. *Id.* And the fifth hypothetical added that the person would be "off task 20 percent of the time or would miss more than two days of work per month[.]" *Id.* The VE opined that a person with that RFC was not "competitively employable." *Id.* Thus, further adjustments to Plaintiff's RFC may not result in a disability finding. If, however, for example, Dr. Hodde's opinion that Plaintiff's impairments would cause her to be absent from work more than three time a month were credited, based on the VE's testimony, a disability finding may be warranted.

## V.

## CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED:  November 16, 2015
_____

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE



**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**